Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 6595 | **DATE** | 3/3/2003 |
| **CASE TITLE** | RICHARD HUFF vs. JONATHAN WALLS | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Richard Huff's petition for a writ of *habeas corpus* [1-1] is denied. ENTER MEMORANDUM OPINION AND ORDER.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. |
|---|---|
| | No notices required. |
| ✓ | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |
| CB | courtroom deputy's initials |

MAR 04 2003
date docketed
3/4/2003
date mailed notice
PW
mailing deputy initials

Document Number
71

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| United States of America ex. rel., RICHARD HUFF, <br><br> Petitioner, <br><br> v. <br><br> JONATHAN WALLS, Warden, Menard Correctional Center, <br><br> Respondent. | No. 02 C 6595 <br><br> Suzanne B. Conlon, Judge |

## **MEMORANDUM OPINION AND ORDER**

Richard Huff was convicted of murder and sentenced to life in prison without parole. The Illinois Appellate Court affirmed. *People v. Huff*, No. 1-00-2414, slip op. (6th Div. Sept. 28, 2001). The Illinois Supreme Court denied Huff's petition for leave to appeal. *People v. Huff*, 198 Ill.2d 600 (2002). Huff did not petition the United States Supreme Court for a writ of *certiorari*. Huff now moves to vacate his murder conviction and sentence pursuant to 28 U.S.C. § 2254. He claims (i) his due process rights were violated because the evidence was insufficient to find him guilty beyond a reasonable doubt, and (ii) his sentence was imposed in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000).[1]


DOCKETED
MAR 0 4 2003

---

[1] Huff also claims that the statute under which he was sentenced was declared unconstitutional by the Illinois Supreme Court. The court will not address this claim because it does not implicate a violation of the federal constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). The application of state sentencing rules does not present a cognizable claim for federal *habeas* relief. *Kurzawa v. Jordan*, 146 F.3d 435, 440 (7th Cir. 1998).

1

## BACKGROUND

The following facts are taken from the opinion of the Illinois Appellate Court. *See People v. Huff*, No. 1-00-2414, slip op. (6th Div. Sept. 28, 2001). For purposes of *habeas* review, the court presumes these factual determinations are correct. 28 U.S.C. § 2254(e)(1); *Abrams v. Barnett*, 121 F.3d 1036, 1038 (7th Cir. 1997). On September 10, 1997, Huff arrived home after midnight to find his five-year-old daughter, Keisha, awake and sitting at the kitchen table. Huff's girlfriend, Carla, told him that Keisha had not yet finished her homework. Keisha's kindergarten teacher earlier complained to Carla that Keisha was not turning in her coloring and tracing homework. Huff went to his bedroom and got a belt. He returned to the kitchen and told Keisha she had fifteen minutes to finish her homework. After fifteen minutes, Huff hit Keisha with his belt four or five times. After Huff noticed that Keisha put playing cards in her underwear to protect against the belt, he told her to take off her clothes.

After another fifteen minute period, Keisha lied about completing her homework. This time Huff belted her four or five times while Keisha had her hands against the wall. Keisha fell to the floor, and Huff issued a new thirty minute time limit for Keisha to complete her homework. After checking the incomplete homework, Huff again hit Keisha seven or eight times. When she tried to flee, she fell and hit her head. Huff then imposed a new twenty minute deadline for Keisha to complete her homework. Because Huff's belt was ripping, he retrieved a whip made from plastic bags wrapped in electrical tape. He whipped Keisha as she ran into her bedroom. There, Huff continued to whip her three or four more times. He ordered her back to the kitchen and slapped her head to make her finish.

2

Twenty more minutes elapsed and Huff began whipping Keisha. Although Carla told Huff to stop, he gave the child another time limit, which led to another whipping with Keisha's hands on the wall. While trying to escape, Keisha hit her head on the table and also fell between the stove and freezer, resulting in a cut on her back. At 3:30 a.m., Carla told Huff that Keisha was bleeding, and the whippings stopped. Huff helped Keisha wash and he put her to bed, but he made her stay awake for an hour because he noticed she had hit her head a few times. Keisha fell asleep at approximately 5:00 a.m. At 8:45 a.m. Huff tried to wake Keisha, who was lying on the bedroom floor. She did not respond. Huff splashed water on her face. Carla called 911 at a neighbor's house. A paramedic arrived and removed Keisha from the apartment. Keisha was pronounced dead at the hospital due to multiple blunt trauma injuries.[2] Huff made a statement consistent with these facts.

Huff was convicted of first degree murder. The trial court found that Huff was eligible for the death penalty, but did not impose it because Huff had no criminal background. Huff was sentenced to life in prison.

## DISCUSSION

### I. Procedural Default

Before a federal court may grant *habeas* relief to a state prisoner, the prisoner must exhaust his remedies in state court. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). To satisfy the exhaustion requirement, the petitioner must have (1) raised the claim in such a way as fairly to apprise the state courts of the constitutional nature of the claim,

---

[2]The appellate court record does not make the time or reason for death clear, but the cause of death is undisputed. *See* Resp. Answer, Ex. B at 6, and Ex. C at 14.

*Wilson v. Briley*, 243 F.3d 325, 327 (7th Cir. 2001); (2) appealed the claim to the state's highest court, or, where, as in Illinois, review is discretionary, sought to appeal it, *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999); and (3) complied with the state's procedural requirements. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). If a claim fails any of these tests, it has been procedurally defaulted.

Respondent does not dispute that Huff properly gave the Illinois courts full and fair opportunity to adjudicate his due process claim. Huff argued the issue to the state appellate court, *see* Resp. Answer, Ex. B at 7-8, and on leave to appeal to the Illinois Supreme Court. *See* Resp. Answer, Ex. D at 5-7. However, Huff did not present his *Apprendi* claim to the Illinois Supreme Court. In fact, he explicitly withdrew the *Apprendi* claim in his brief for leave to appeal. *See* Resp. Answer, Ex. D at 8. Because Huff did not present his *Apprendi* claim to the Illinois Supreme Court, his claim has been procedurally defaulted.

Procedural default precludes review by the court unless Huff demonstrates "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate[s] that failure to consider the claims will result in a fundamental miscarriage of justice." *Anderson v. Cowan*, 227 F.3d 893, 899-900 (7th Cir. 2000), *citing Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A fundamental miscarriage of justice is limited to "the extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 321 (1995).

Huff does not argue or present evidence that demonstrates cause or prejudice resulting from his failure to appeal his *Apprendi* claim. Nor does Huff argue that he is actually innocent of

4

the crime of conviction. Therefore, the *Apprendi* claim was procedurally defaulted and the court will not reach the merits of the argument.

## II. Standard of Review

A petitioner seeking a writ of *habeas corpus* must establish that the state court proceeding:

> (1) resulted in a decision that was *contrary to,* or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Ellsworth v. Levenhagen*, 248 F.3d 634, 638 (7th Cir. 2001). A state court decision is "contrary to" Supreme Court precedent if the state court applied a rule that contradicts Supreme Court decisions or if the state court addressed facts that are materially indistinguishable from a Supreme Court decision to the contrary. *Whitehead v. Cowan*, 263 F.3d 708, 716 (7th Cir. 2001), *citing Williams v. Taylor*, 529 U.S. 362 (2000). A state court decision is an "unreasonable application" of Supreme Court precedent when the state court identifies the proper governing precedent of the Supreme Court, but unreasonably applies that precedent to the facts, or when the state court unreasonably extends or refuses to extend Supreme Court precedent in a new context. *Whitehead*, 263 F.3d at 716-17, *citing Williams*, 529 U.S. at 407.

## III. Sufficiency of the Evidence

Huff argues the evidence does not support a finding that he intended to kill his daughter. The court's review of sufficiency of the evidence claims is limited. The evidence is sufficient if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v.*

5

*Virginia*, 443 U.S. 307, 319 (1979). Although the Illinois Appellate Court did not cite *Jackson* in its opinion, the court applied the *Jackson* standard. *People v. Huff*, No. 1-00-2414, slip op. at 5 (6th Div. Sept. 28, 2001). Thus the "unreasonable application" prong of 28 U.S.C. § 2254(d) is implicated. *Piaskowski v. Bett*, 256 F.3d 687, 691 (7th Cir. 2001). Huff has the burden of establishing that the state appellate court unreasonably applied the *Jackson* standard. *Woodford v. Visciotti*, 123 S.Ct. 357, 360 (2002).

The appellate court examined the facts of the case and the elements of the crime of first degree murder. Under Illinois law, to prove a defendant guilty of first degree murder, the prosecution must show he either intended to kill or do great bodily harm to an individual or knew that his acts created a strong probability of death or great bodily harm. *People v. Huff*, No. 1-00-2414, slip op. at 4 (6th Div. Sept. 28, 2001), *citing* 720 ILCS 5/9-1(a)(1)-(a)(2). The requisite mental state may be inferred from defendant's conduct, circumstances surrounding the crime, disparity in size and strength between defendant and victim, and extent of victim's injuries. *Id.*, *citing People v. Reed*, 298 Ill.App.3d 285, 301 (1998). The court noted that a 26-year-old man physically assaulted a 5-year-old child repeatedly every 15 to 20 minutes for three hours. *Id.* He used a belt and whip, and he saw her hit her head numerous times. *Id.* She was naked, bleeding, and bruised. *Id.* Huff did not let her sleep because he was worried about her head injuries. *Id.* By his own admission, he beat her because she did not finish her kindergarten homework. *Id.* The court concluded that "an objective, reasonable person could find that the defendant either intended to kill or do great bodily harm, or knew that such acts created a strong probability of death or great bodily harm, and further, that the state proved defendant guilty beyond a reasonable doubt." *Id.* at 5.

6

Huff fails to establish that the appellate court's opinion was unreasonable. He maintains that he was an uneducated, inexperienced parent; that his daughter's death was an accident; that this course of punishment was his normal means of discipline; and, in essence, that his intent to inflict serious bodily harm was excused because he gave his daughter a bath and tucked her in bed. These arguments lack merit. Huff belted and whipped his five-year-old daughter repeatedly every 15 to 20 minutes for three hours. Huff knew Keisha was in danger; he delayed her sleep for one hour because of her head injuries. Although Huff gave Keisha a bath and tucked her in bed, a reasonable person could find that his continued brutality created a strong probability of death or great bodily harm. As the appellate court noted, this is all that is needed to infer the requisite mental state for first degree murder. 720 ILCS 5/9-1(a)(1)-(a)(2). Huff fails to establish that the appellate court's decision was unreasonable or inconsistent with the facts and circumstances of the case. *Sanchez v. Gilmore*, 189 F.3d 619, 623 (7th Cir. 1999).

March 3, 2003                                          ENTER:

                                                       Suzanne B. Conlon
                                                       United States District Judge